1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE ALLEN, | Case No. 1:22-cv-00768-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING THIS ACTION AND ALL DEFENDANTS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND |
| v. | |
| MICHAEL BOUDREAUX, et al., | |
| Defendants. | ORDER VACATING SEPTEMBER 14, 2022 HEARING |
| | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| | (ECF Nos. 1, 8) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Defendants Tulare County Sheriff Michael Boudreaux's, Tulare County Sheriff's Sergeant Ronna Brewer's, and Tulare County Sheriff's Deputy Rhonda L. Pack's, motion to dismiss this action brought pursuant to Federal Rule of Civil Procedure 12(b). (ECF No. 8.)

Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of

consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action has been directly assigned to a Magistrate Judge only.  No consent forms have been returned in this action, and some named Defendants have not appeared.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall direct the Clerk of the Court to assign a District Judge to this action and the Court shall issue findings and recommendations as to the pending motion to dismiss.

Plaintiff filed no opposition to the motion to dismiss.  The Court, having reviewed the moving papers, the declaration, request for judicial notice, and exhibits attached thereto, the lack of an opposition from the Plaintiff, and the Court's record, finds this matter suitable for decision without further briefing or oral argument.  See Local Rule 230(c), (g).  Accordingly, the hearing set for September 14, 2022, shall be vacated.

For the reasons explained herein, the Court recommends Defendants' motion to dismiss be granted.  The Court further recommends Defendant Superior Court for the County of Tulare be dismissed *sua sponte*; and the Defendant County of Tulare Sheriff's Department be dismissed despite not expressly being joined in the notice of motion as a moving party to the instant motion to dismiss.  The Court recommends Plaintiff not be granted leave to amend, and that this matter be dismissed with prejudice as to the named Defendants.

## II.

## BACKGROUND

### A.    Procedural Background

On June 23, 2022, Plaintiff Charlotte Allen, also known as Charlotte Jackson, proceeding *pro se*, filed this action against Defendants: (1) Michael Boudreaux, identified as a sheriff for the County of Tulare ("Boudreaux"); (2) Ronna Brewer, identified as a sergeant ("Brewer"); (3) Rhonda L. Pack, identified as a deputy ("Pack"); (4) the County of Tulare Sheriff's Department ("Sheriff's Department"); and (5) the Superior Court of California, County of Tulare ("Superior Court").  (Compl. 10, ECF No. 1.)  On June 28, 2022, the Court denied Plaintiff's application to proceed *in forma pauperis* and ordered Plaintiff to file a long form application.  (ECF Nos. 2, 3.)  On the same date, Plaintiff paid the filing fee in this action.

1   On July 6, 2022, summonses were issued as to Boudreaux, Brewer, and Pack.  (ECF No.

2   4.)  On July 20, 2022, summonses were issued to the Sheriff's Department, and the Superior

3   Court.  (ECF No. 6.)  On July 20, 2022, Plaintiff filed executed summonses purporting to have

4   served Defendants Brewer, Pack, and Boudreaux.  (ECF No. 7.)  No summonses have been

5   returned as to the Superior Court or the Sheriff's Department.

6   On August 5, 2022, Defendants Boudreaux, Brewer, and Pack, filed a motion to dismiss

7   pursuant to Federal Rule of Civil Procedure 12(b), and set the hearing for September 14, 2022, in

8   Courtroom 9.  (ECF No. 8.)

9   To date, Plaintiff has not filed an opposition to the motion to dismiss, and the deadline to

10   do so has expired.

11   **B.      Complaint Allegations**

12   Plaintiff proffers federal question jurisdiction exists, and lists the following laws as bases

13   for jurisdiction: 18 U.S.C. §§ 241, 242, 1621, 1956; 42 U.S.C. §§ 1983, 1985, 1986; and the First

14   and Fifth Amendments to the United States Constitution.  (Compl. 4, 9.)  Plaintiff proffers this

15   action involves the property located at 4747 West Ashland Avenue, Visalia, California (the

16   "Property").  (Compl. 5.)  Plaintiff alleges that on or about June 15, 2022, the Property, identified

17   as Plaintiff's house, "was stolen by [the] Tulare County Sheriff.  My husband . . . and my

18   daughter witnessed the crime [and] CAPITAL REAL Estate Group is also involved."  (Compl.

19   6.)

20   Plaintiff states that, on May 11, 2022, she sent Defendant Boudreaux a certified letter:

21   stating her unalienable rights were being violated; stating she had a three day notice to leave her

22   home on March 10, 2022; stating the mortgage company said "they did not sell my house";

23   asking him for help; and providing her email address.  (Compl. 8.)  Plaintiff complains she was

24   never contacted.  (Id.)

25   Plaintiff alleges that Defendant Brewer taped an eviction notice on her door and changed

26   the locks so Plaintiff could not get in the Property.  (Id.)

27   Plaintiff alleges Defendant Pack signed the eviction notices taped to her window.  (Id.)

28   Plaintiff alleges Defendant Sheriff's Department is a de facto Sheriff's Department; that

1 the Sheriff is enforcing the color of law on the people in the County of Tulare; and that the
2 Sheriff is not protecting the people's unalienable rights.  (Id.)

3     Plaintiff alleges that the Superior Court is a foreign court enforcing and issuing
4 judgments under the color of law.  (Id.)

5     As for damages and relief, Plaintiff proffers that she would like monetary relief
6 immediately in order to buy a new home with cash and that she does not want the Defendants to
7 know where she lives.  (Compl. 11.)  Plaintiff states her house was broken into by these
8 "thieves" and that according to her alarm system, they spent 66 minutes in the Property.  (Id.)
9 Plaintiff states she does not know what was taken from the Property.  A celebration of life for her
10 parents was scheduled for June of 2022, but had to be cancelled because of these events, and
11 Plaintiff claims the Defendants have essentially stolen this important celebration from her and
12 her family.  (Id.)

13     Plaintiff also avers to a request for an injunction and permanent restraining order for her
14 and her family.  (Compl. 12.)  Plaintiff states she wants the injunction granted to get the Property
15 back in her possession.  Plaintiff states she wants a permanent restraining order against "all law
16 enforcement and courts who are operating under the color of law, to not make any contact with
17 our family."  (Id.)

18     Plaintiff also wants the Defendants to be indicted and charged with crimes.  Plaintiff
19 states she honestly believes "this is all a Satanic agency perpetrated on [her] family [and] [i]t is
20 no coincidence that the case # ends in 666, the date my house was taken over was 06-15-2022.  0
21 + 6 = 6[,] 1 + 5 = 6[,] [and] 2 + 0 + 2 + 2 = 6[,] which is another 666 [and] they were in my
22 house for 66 minutes."  (Id.)

23     Plaintiff requests the value of the home plus punitive damages in the amount $2,250,000;
24 home repairs plus punitive damages in the amount of $300,000; the cost of a new home in the
25 amount of $2,000,000; the costs for movers in the amount of $15,000; a trespass violation in the
26 amount $1,000,000 for each minute the Property was occupied, or $66,000,000; $1,000,000 per
27 day that she was deprived from her house; $5,000 to install cameras; for a total of damages in
28 excess of $166,666,666.06.  (Compl. 13.)

1    Plaintiff attaches a notice to vacate signed by Boudreaux on June 3, 2022.  (Compl. 14.)
2    Plaintiff attaches a writ of execution for the Property signed by a deputy of the Superior Court
3    for the County of Tulare, on May 18, 2022.  (Compl. 15-16.)  Plaintiff attaches a picture of what
4    appears to be a notice of eviction posted on the Property, dated June 15, 2022.  (Compl. 17.)
5    Plaintiff attaches a screenshot of a website screenshot that appears to be a template for people to
6    print out and post a no trespass warning that indicates, in part, that it provides notice to agents of
7    the government that if they violate the owner's rights, they will be subject to civil penalties in the
8    amount of one million dollars of silver coin and be subject to up to ten years in prison and incur
9    civil penalties.  (Compl. 18.)  Plaintiff appears to attach a picture of a broken door knob or lock.
10   (Compl. 19.)  Finally, Plaintiff attaches one page of a multi-page document that appears to be a
11   document signed by Plaintiff stating she is not bound by any law crated by man, and the Bible is
12   her only handbook.  (Compl. 20.)

### III.

### LEGAL STANDARD

15   Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on
16   the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A
17   motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro
18   v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations
19   of material fact are taken as true and construed in the light most favorable to the nonmoving
20   party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading
21   standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual
22   allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
23   accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
24   Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-
25   pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However,
26   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
27   statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint
28   must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550

1  U.S. at 570.

2       In deciding whether a complaint states a claim, the Ninth Circuit has found that two

3  principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

4  "may not simply recite the elements of a cause of action, but must contain sufficient allegations

5  of underlying facts to give fair notice and to enable the opposing party to defend itself

6  effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

7  to require the defendant to be subjected to the expenses associated with discovery and continued

8  litigation, the factual allegations of the complaint, which are taken as true, must plausibly

9  suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there

10 is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

11 legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696,

12 699 (9th Cir.1988)).

13 **IV.**

14 **DISCUSSION**

15      The Court first turns to preliminary considerations regarding the moving Defendants; the

16 *pro se* status of the Plaintiff and the fact no opposition was filed; and the Defendants' request for

17 judicial notice.

18     **A.**    **Preliminary Considerations**

19     1.    The Moving Defendants

20      The Court notes that the notice of motion does not identify the Sheriff's Department as a

21 moving Defendant.  The motion's summary of the complaint does not state that the Sheriff's

22 Department or the Superior Court are named as Defendants.  (Mot. 3-4.)  This is somewhat

23 understandable as it apparently results from the manner Plaintiff listed all named Defendants.[1]

24 (See Compl. 2-3, 8-9, 10.)  However, counsel for Defendants did in fact appear in the CM/ECF

25 system on behalf of Defendant Sheriff's Department, though not the Superior Court.  Further,

26 when entering the motion into the ECF system, counsel or an assistant in fact entered the

27 

---

28 [1] Herein, the Court's reference to the "Defendants" will generally refer to the moving Defendants, rather than the "named Defendants."

1   Sheriff's Department as a moving party despite not being named in the notice of the motion.

2       The Court does not consider the Sheriff's Department to be a joining party to the motion,

3   as the Sheriff's Department is not expressly named as a movant.   Nonetheless, the Court finds

4   dismissal of this Defendant appropriate for the reasons explained herein.   The Court also finds it

5   appropriate to *sua sponte* dismiss the Superior Court as a Defendant for the reasons explained

6   herein.

7               2.       The *Pro Se* Plaintiff and No Filed Opposition

8       Plaintiff is proceeding *pro se*.   The Court is required to construe the filings of a *pro se*

9   party liberally, and accept as true all factual allegations contained in the complaint.   Thomas v.

10   Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010); Erickson v. Pardus, 551 U.S. 89, 94 (2007).

11   Although a court must accept as true all factual allegations contained in a complaint, a court need

12   not accept a plaintiff's legal conclusions as true.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

13   "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . .

14   'stops short of the line between possibility and plausibility of entitlement to relief.' "   Id.

15   (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).   Plaintiff is not

16   incarcerated.   Because an "inmate's choice of self-representation is less than voluntary . . . [and]

17   coupled with the further obstacles placed in a prisoner's path by his incarceration," *pro se*

18   inmates are given greater leeway than non-incarcerated *pro se* litigants.   Thomas, 611 F.3d at

19   1150 (quoting Jacobsen v. Filler, 790 F.2d 1362, 1365 n.4 (9th Cir.1986)).

20       Plaintiff did not file an opposition to the motion to dismiss and the deadline to do so has

21   expired.   L.R. 230(c).   "No party will be entitled to be heard in opposition to a motion at oral

22   arguments if opposition to the motion has not been timely filed by that party."   L.R. 230(c)

23   (citing L.R. 135).   "A failure to file a timely opposition may also be construed by the Court as a

24   non-opposition to the motion."   L.R. 230(c).   The Court declines to construe the failure to timely

25   file an opposition as a non-opposition to the motion.   However, the Court finds oral argument or

26   attempting to obtain briefing from the non-responding Plaintiff to be unnecessary for the Court to

27   make proper findings and recommendations herein.   See Local Rule 230(c), (g).   Defendants'

28   arguments remain unopposed, and a *pro se* party is not relieved from the obligations imposed on

1   all parties appearing before the Court, despite the liberal eye toward their filings.  See Maxson v.

2   Mosaic Sales Sols. U.S. Operating Co., LLC, No. 2:14-CV-02116-APG, 2015 WL 4661981, at

3   *2 (D. Nev. July 29, 2015) ("While the Court liberally construes the filings of *pro se* litigants . . .

4   *pro se* litigants are not relieved from following applicable rules of procedure.") (citations

5   omitted); Arunachalam v. Davila, No. 3:18-CV-02488-JD, 2018 WL 10245911, at *1 (N.D. Cal.

6   May 17, 2018) ("Plaintiff's pro se status  does not relieve her  of  conformity  to  the  pleading

7   rules.").

8          The Court shall proceed to liberally construe the allegations in the complaint and afford

9   the Plaintiff the benefit of the doubt when analyzing the Defendants' arguments, and in making

10  its own *sua sponte* determinations herein.  See Citizens of Idaho v. Idaho, No. 1:11-CV-620-

11  ELJ-LMB, 2012 WL 3905235, at *4 (D. Idaho Aug. 15, 2012) ("A court is under special

12  obligations when considering motions to dismiss a complaint filed by a plaintiff without legal

13  representation . . . [and] the Court's obligation is, 'where the petitioner is pro se ... to construe

14  the pleadings liberally and to afford the petitioner the benefit of any doubt.' ") (quoting Hebbe v.

15  Pliler, 627 F.3d 338, 342 (9th Cir.2010)).

16          3.     Request for Judicial Notice

17          Defendants submitted a request for judicial notice.  (ECF No. 8-2 at 1-2.)  The exhibits

18  are electronic copies of court files of the Superior Court, County of Tulare, from the case of

19  ECP, LP, v. Charlotte Jackson, case number VCL201666.  (Decl. Andrew K. Haller Supp. Defs.'

20  Mot. Dismiss ("Haller Decl.") ¶ 2, ECF No. 8-1 at 1-2.)

21          As a general rule, the court may not consider any material outside the pleadings in ruling

22  on a Rule 12(b)(6) motion.  United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir.

23  2011); United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003) ("When ruling on a Rule

24  12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must

25  normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must

26  give the nonmoving party an opportunity to respond.").  There are two exceptions to this rule:

27  when the complaint necessarily relies on the documents; or where the court takes judicial notice

28  of documents.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Ritchie, 342 F.3d

at 908 ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

Under the Federal Rules of Evidence, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002).  The Court shall grant Defendants' request for judicial notice of court filings and matters of public record.  The judicially noted records include:

1.  A complaint for unlawful detainer filed March 22, 2022, by ECP, LP, in Tulare County Superior Court, case number VCL201666 (Haller Decl. ¶ 2, Ex. A, ECF No. 8 at 9-16);

2.  A request for default judgment filed on May 17, 2022, and entry of default on the same date, in case number VCL201666 (Haller Decl. ¶ 2, Ex. B, ECF No. 8 at 17-19); and

3.  A writ of possession issued by the Tulare County Superior Court on May 18, 2022, in case VCL201666 (Haller Decl. ¶ 2, Ex. C, ECF No. 8 at 20-24).[2]

Defendants also state that during this time, Plaintiff filed several motions in the trial court seeking to vacate the unlawful detainer judgement, but was unsuccessful.  Defendants did not submit a record of these motions, and so the Court declines to take judicial notice of such general

---

[2]  This exhibit includes the writ of possession executed by the Tulare County Sheriff's Office.  (ECF No. 8 at 24.) The Court finds it may take judicial notice of this document as well.  See United States Bank N.A. v. Gonzales, 2011 U.S. Dist. LEXIS 36221, at *1 n.2 (E.D. Cal. Mar. 23, 2011) (taking judicial notice of writ of execution); Ezor v. McDonnell, No. CV 19-8851-JVS (AGR), 2020 WL 6468448, at *3 (C.D. Cal. Oct. 21, 2020).  To the extent the document concerning execution of the writ of possession is not a matter of public record in the same manner as the court filing, the Court would take judicial notice of it as a document incorporated by reference in the complaint (Compl. at 8, 14, 17).  Ritchie, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

1  fact.

2  **B.**    **Defendants' General Arguments**

3  Defendants submit that Plaintiff fails to State a Title 42 claim under the First or Fifth

4  Amendments, and argue Plaintiff has failed to state a claim under Section 1983, 1985, 1986.

5  (Mot. 5-6.)  Defendants proffer Plaintiff was the owner of the property which was foreclosed on,

6  and sold to ECP, LP; Plaintiff's refusal to vacate the Property led to ECP, LP, acquiring a default

7  unlawful detainer judgment against her; on June 15, 2022, Defendants executed the Superior

8  Court's order in that action by evicting Plaintiff from the property and returning it to its rightful

9  owner; that Plaintiff does not identify any acts by any Defendants falling outside the lawful

10  process required by the orders issued in the unlawful detainer action; Plaintiff fails to state how

11  her eviction from the Property that no longer belonged to her violates her First or Fifth

12  Amendment rights; and fails to identify any actions by Defendants which violated those or any

13  other protected right.

14  Defendant further submits that Plaintiff fails to allege facts showing that Defendants

15  violated any of the criminal statutes she cited; and that in any event, criminal statutes generally

16  do not provide a basis for civil liability, and that courts have specifically ruled that 18 U.S.C.

17  Sections 241 (criminal conspiracy against rights) and 242 (criminal deprivation of rights under

18  color of law) do not establish a basis for civil liability.[3]  See <u>Aldabe v. Aldabe</u>, 616 F.2d 1089,

19  1092 (9th Cir. 1980).  Defendants proffer there is no indication in the language of 18 U.S.C. §

20  1521, which criminalizes the filing of a false lien against the property of a federal official, that it

21  was intended to provide a basis for civil liability; and similarly, 18 U.S.C. § 1956 is a criminal

22  statute concerning money laundering which provides only for criminal penalties for specific

23  actions in violation of that section.  Thus, there is no indication Congress intended either statute

24  to fall outside the general rule that criminal statutes do not establish a civil cause of action.

25  Defendants also assert they are entitled to qualified immunity as they did not violate

26  Plaintiff's First or Fifth Amendment rights; a reasonable Sheriff, sergeant, and deputy, could not

27

28  ---
[3] Defendants write "criminal," but it appears Defendants meant "civil."  (<u>See</u> Mot. 7.)

1    believe they were violating clearly established rights of Plaintiff by executing a court order

2    requiring her eviction from property that no longer belonged to her; and under such

3    circumstances, it cannot be disputed a reasonable law enforcement officer would believe the

4    actions taken by these Defendants were reasonable.  (Mot. 8.)

5        **C.    The Court Finds Plaintiff Has Failed to State a Cognizable Claim**

6        Plaintiff brings claims under 18 U.S.C. §§ 241, 242, 1621, 1956; 42 U.S.C. §§ 1983,

7    1985, 1986; and the First and Fifth Amendments to the United States Constitution.

8        1.    The First Amendment

9        It is not clear what claim Plaintiff could be bringing pursuant to the First Amendment,

10   however, given the aversions to religion, the Court considers the Free Exercise Clause.  The

11   Court finds Plaintiff fails to state any claim under the First Amendment.  See Farley v.

12   Henderson, 875 F.2d 231, 233 (9th Cir.) ("Because Magno was arrested under a valid Arizona

13   statute, first amendment free exercise protection is, as a matter of law, unavailable to

14   appellants.").  Extrapolating from the various attachments and aversions made by Plaintiff

15   concerning her right to the Property, the Court finds no support for a potential claim that

16   Plaintiff's religious rights allow her to avoid court process related to a foreclosure or unlawful

17   detainer action executed through the Sheriff's Department.   "The protection that the First

18   Amendment provides to '*legitimate* claims to the free exercise of religion,' . . . does not extend

19   to conduct that a State has validly proscribed." Emp. Div., Dep't of Hum. Res. of State of Or. v.

20   Smith, 485 U.S. 660, 671 (1988) (quoting Hobbie v. Unemployment Appeals Comm'n, 480 U.S.

21   136, 142 (1987)); see also Farley v. Henderson, 875 F.2d 231, 233 (9th Cir.) ("Because Magno

22   was arrested under a valid Arizona statute, first amendment free exercise protection is, as a

23   matter of law, unavailable to appellants."), opinion amended and superseded, 883 F.2d 709 (9th

24   Cir. 1989).

25       For additional reasons explained herein, the Court finds no indication any Defendants

26   violated Plaintiff's First Amendment or other constitutional rights.

27       2.    Due Process

28       Plaintiff cites to the Fifth Amendment presumably to assert her right to not be deprived of

property without due process of law.  Plaintiff sues no federal actors, and thus the Court provides the relevant standards under the Fourteenth Amendment.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  The due process clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process.  Albright v. Oliver, 510 U.S. 266, 272 (1994).

The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them.  Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).  Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression.  Lewis, 523 U.S. at 846.  The Supreme Court has held that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.' "  Id. at 847.  "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense."  Brittain v. Hansen, 451 F.3d 982, 990 (9th Cir. 2006) (quoting Lewis, 523 U.S. at 846).

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.' "  Brittain, 451 F.3d at 990.  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity[;] and the Supreme Court has been reluctant to expand the concept of substantive due process.  Albright, 510 U.S. at 271-72.  To state a substantive due process claim, a plaintiff must "show both a deprivation of [his] liberty and conscience shocking behavior by the government."  Brittain, 451 F.3d at 991.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972).  "[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing

1    procedural requirements." Brittain, 451 F.3d at 1000. "(D)ue process is flexible and calls for

2    such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S.

3    319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

4         Plaintiff has alleged no facts by which it could reasonably be inferred that Plaintiff is not

5    receiving the process due in her state court case, or that she may receive through appropriate

6    appeal in state court. Additionally, "[i]f the state court has issued a final judgment, this court

7    lacks jurisdiction [as] [f]ederal courts lack jurisdiction to review or modify state court judgments

8    under the *Rooker–Feldman* doctrine." McGlothin v. Santos, No. 1:08CV1290LJOGSA, 2008

9    WL 5135996, at *4–7 (E.D. Cal. Dec. 8, 2008) (plaintiffs "are challenging the right of

10   possession of the premises which is the exact issue that was adjudicated in the state eviction

11   proceedings . . . if there is a final judgement in the state proceeding, this court does not have

12   jurisdiction over the claim."), report and recommendation adopted, No. 1:08CV1290 LJO GSA,

13   2009 WL 499342 (E.D. Cal. Feb. 26, 2009), aff'd sub nom. Sconiers v. Santos, 399 F. App'x 219

14   (9th Cir. 2010). "This rule applies to [claims] 'inextricably intertwined' with final state court

15   decisions, even if such 'inextricably intertwined' claims were not raised in state court." Id.

16   (citations omitted). "[A] party losing in state court is barred from seeking what in substance

17   would be appellate review of the state judgment in a United States district court, based on the

18   losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v.

19   De Grandy, 512 U.S. 997, 1005–06 (1994). Further, if an aspect of the action is still pending in

20   state court, the Court finds it should not interfere under principles of abstention See McGlothin,

21   2008 WL 5135996, at *4–7 ("Similarly, if the unlawful detainer case is still pending in the state

22   court, this court should not interfere with those proceedings.").

23        3.    Section 1983

24        Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

25   other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d

26   1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

27   Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The statute provides:

28        Every person who, under color of [state law] . . . subjects, or causes to be

13

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted).

The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  To state a claim under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Thus, to state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each Defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 676; Simmons, 609 F.3d at 1020–21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted).  "Under

the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

For the reasons explained throughout this opinion, Plaintiff has not alleged facts demonstrating any Defendant participated in the violation of any federal right, nor any violation of a federal right generally.  Accordingly, the Court finds the Plaintiff has not stated a claim under Section 1983.

### 4.    Section 1985

The Court presumes Plaintiff attempts to bring a claim under Section 1985(3) ("Depriving persons of rights or privileges"), not 1985(1) ("Preventing officer from performing duties") or 1985(2) ("Obstructing justice; intimidating party, witness, or juror").

Section 1985 prohibits private individuals from conspiring to deprive another person of their civil rights.  Griffin v. Breckenridge, 403 U.S. 88, 96 (1971).  Section 1985(3) protects against conspiracies to deprive a person from equal protection of the law.  42 U.S.C. § 1985(3). "The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy and (3) a resulting injury."  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000).

A conspiracy claim brought under Section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540– 41 (9th Cir. 1989) (citation omitted) ), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989) ).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective

of the conspiracy." <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

To state a claim under section 1985(3), a plaintiff must allege sufficient facts showing "a deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992)). " 'The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.' " <u>Orin v. Barclay</u>, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971) (emphasis omitted). "An indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action. . .." <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 989 (9th Cir.), <u>opinion amended on denial of reh'g</u>, 275 F.3d 1187 (9th Cir. 2001) (quoting <u>Addisu</u>, 198 F.3d at 1134). "A mere allegation of conspiracy without factual specificity is insufficient" to state a claim. <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 626 (9th Cir. 1988).

Here, Plaintiff fails to state a claim under section 1985(3) as the complaint is devoid of any factual allegations that there was some racial or class-based discriminatory animus by the defendants. Further, Plaintiff has not alleged sufficient facts to demonstrate that the defendants had a meeting of the minds to violate Plaintiff's constitutional rights.

     5.   <u>Section 1986</u>

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.' " <u>Park v. City of Atlanta</u>, 120 F.3d 1157, 1159–60 (11th Cir. 1997) (quoting 42 U.S.C. § 1986). "Section 1986 claims are therefore derivative of § 1985 violations." <u>Park</u>, 120 F.3d at 1160. "The text of § 1986 requires the existence of a § 1985 conspiracy." <u>Id.</u>

As Plaintiff has not stated any cognizable conspiracy claim under section 1985, she cannot state any claim for knowledge of and neglecting to prevent the conspiracy. <u>Stephens v. Multnomah Cty. by & through Judicial Dep't</u>, 678 F. App'x 517, 519 (9th Cir. 2017) ("A claim

1  can be stated under section 1986 only if the complaint contains a valid claim under section

2  1985.") (quoting Karim-Panahi, 839 F.2d at 626).

3      6.      Title 18 of the United States Code

4      Plaintiff also alleges violations of 18 U.S.C. §§ 241, 242, 1621, and 1956.  (Compl. 4, 9.)

5  "[T]he fact that a federal statute has been violated and some person harmed does not

6  automatically give rise to a private cause of action in favor of that person."  Touche Ross & Co.

7  v. Redington, 442 U.S. 560, 568 (1979) (quoting Cannon v. University of Chicago, 441 U.S.

8  677, 688 (1979).  Rather, the court is to consider if Congress intended to create the private right

9  of action in the statute and begins with the language of the statute itself.  Touche Ross & Co.,

10  442 U.S. at 568.  "Civil causes of action ... do not generally lie under the criminal statutes

11  contained in Title 18 of the United States Code."  Del Elmer; Zachay v. Metzger, 967 F. Supp.

12  398, 403 (S.D. Cal. 1997).

13      Here, the sections cited under Title 18 provide for fines and incarceration for criminal

14  offenses and do not set forth a private cause of action nor is there any language that would imply

15  that a cause of action exists to allow Plaintiff to seek a remedy for these criminal statutes in this

16  action.

17      7.      The Court Finds Plaintiff has Failed to State a Cognizable Claim

18      "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-

19  pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal

20  question is presented on the face of the plaintiff's properly pleaded complaint."  Republican Party

21  of Guam v. Gutierrez, 277 F.3d 1086, 1089 (9th Cir. 2002) (citations omitted).  The Court finds

22  no proper basis for federal jurisdiction over this complaint as alleged.  For all of the above

23  reasons, the Court finds Plaintiff has failed to state a cognizable claim under any of the legal

24  provisions cited in the complaint.  The Court recommends Defendants' motion to dismiss should

25  be granted on such grounds.

26      **D.      Qualified Immunity**

27      The doctrine of qualified immunity protects government officials from civil liability

28  where "their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   " 'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " Stanton v. Sims, 571 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001).  The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.  A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.  The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)).

A government official's conduct violates clearly established law where the "contours" of the right are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (internal quotation marks and citation omitted).  It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Stanton, 134 S.Ct. at 5 (quoting Ashcroft v. al–Kidd, 131 S.Ct. 2074, 2085 (2011).  In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." Hines, 914 F.3d at 1229 (Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)).  The U.S. Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular . . . not to define clearly established law at a high level of generality," but to inquire as to "whether the violative nature of particular conduct is clearly established." 563 U.S. at 742.  In determining whether a right was clearly established the Court looks to "Supreme Court and Ninth Circuit law existing at

1    the time of the alleged act."  Community House, Inc. v. Bieter, 623 F.3d 945, 967 (9th Cir.

2    2010).  Where there is no binding precedent, the courts should look to all available decisional

3    law, including the law of other circuits and district courts.  Id.  Unpublished district court

4    decisions can also inform the analysis in determining whether the law was clearly established.

5    Bahrampour v. Lampert, 356 F.3d 969, 977 (9th Cir. 2004).

6        Issues of qualified immunity should be resolved at the earliest possible stage of litigation.

7    Hunter v. Bryant, 502 U.S. 224, 227 (1991).  However, the Ninth Circuit has stated that

8    "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special

9    problems for legal decision making."  Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018).

10   "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule

11   12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that

12   qualified immunity applies."  O'Brien, 818 F.3d at 936 (citation and internal quotation marks

13   omitted).  "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not

14   only those that support his claim, but also those that defeat the immunity defense."  McKenna v.

15   Wright, 386 F.3d 432, 436 (2d Cir. 2004).  "If the operative complaint 'contains even one

16   allegation of a harmful act that would constitute a violation of a clearly established constitutional

17   right,' then plaintiff[ is] 'entitled to go forward' with [his] claims."  Keates, 883 F.3d at 1235

18   (quoting Pelletier v. Fed. Home Loan Bank of San Francisco, 968 F.2d 865, 872 (9th Cir. 1992)).

19   "In qualified immunity cases, [viewing the facts in favor of the non-moving party] usually means

20   adopting . . . the plaintiff's version of the facts."  Scott v. Harris, 550 U.S. 372, 378 (2007).

21       Defendants do not provide the Court with any specific caselaw in support of the qualified

22   immunity analysis, but generally argue these Defendants, acting as reasonable officers, would

23   not believe they were violating clearly established rights by executing the court order.  (Mot. 8.)

24   Despite the lack of specific caselaw in support, the Court agrees with Defendants that qualified

25   immunity applies, and Plaintiff has submitted no argument in opposition.  Even taking Plaintiff's

26   version of the facts as alleged (Compl. 6, 8), the Court finds no allegation of a harmful act that

27   would constitute a violation of a clearly established constitutional right.  Keates, 883 F.3d at

28   1235; Scott, 550 U.S. at 378.  The Court finds the finding of qualified immunity in Citizens of

Idaho instructive to the circumstances at hand:

> The Plaintiffs' only claim against the Defendant Sheriffs Departments is that the departments wrongfully sold foreclosed properties without a court order, thus violating Plaintiffs' constitutional rights to procedural and substantive due process. It must be noted here that the sale of foreclosed properties by county sheriffs departments is authorized under Idaho law. *See, e.g.,* Idaho Admin. Code r. 35.01.02.019. In addition, the argument that rights to procedural and substantive due process are violated by Idaho law authorizing non-judicial foreclosure and Defendants' actions in accordance with that law has been repeatedly rejected by a long line of authority in the United States Court of Appeals for the Ninth Circuit. *See, e.g., Apao v. Bank of New York,* 324 F.3d 1091, 1094 (9th Cir.2003) (citing *Charmicor, Inc. v. Deaner,* 572 F.2d 694, 696 (9th Cir.1978).
>
> This Court concludes as a matter of law that Plaintiffs' claims against the county sheriffs departments do not state a cause of action for the violation of a constitutional right. Thus, all Plaintiffs' claims against Defendants Ada County Sheriffs Department, Bannock County Sheriffs Department, Canyon County Sheriffs Department, Kootenai County Sheriffs Department Animal Control Division, Twin Fall County Sheriffs Department, and Gem County Sheriffs Department should be dismissed on grounds of qualified immunity with prejudice.

Citizens of Idaho, 2012 WL 3905235, at *3 (footnote omitted).  Additionally, California immunity law, while not directly applicable to a finding of qualified immunity of federal claims, supports a finding of qualified immunity given it supports finding a reasonable officer's belief in these circumstances:

> In addition, officers who execute a court order valid on its face are entitled to immunity. *See* Cal. Gov't Code § 820.4. This immunity, by virtue of Gov't Code § 815.2, inures to the benefit of the public entity employing the particular public employee. Further, California Code of Civil Procedure § 262.1 immunizes the Sheriff from liability for executing "process and orders" which are "regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued."
>
> In this case, the writ of possession authorized enforcement of the judgment by the Sheriff of Alameda County, against the "judgment debtors," which included Vu Cao and "all other occupants." Thus, the writ was "regular on its face" as to both Vu Cao and "all other occupants," which included Dang and Le Cao. A sheriff is not liable for wrongful eviction if the writ is valid on its face, even if it is invalid or unenforceable because of some defect in the procedures. *See George v. County of San Luis Obispo,* 78 Cal.App. 4th 1048, 1054 (2000).

> Because the court finds that amendment would be futile, the claims
> against ACSO are DISMISSED with prejudice.

Dang v. Oakland Police Dep't, No. C 13-4155 PJH, 2014 WL 793613, at *8 (N.D. Cal. Feb. 26, 2014).

Accordingly, the Court recommends the moving Defendants motion to dismiss be granted on such grounds, and the moving Defendants should be dismissed on grounds of qualified immunity.

### E.      The Defendant Sheriff's Department

As noted above, the Defendant Sheriff's Department did not expressly join in the motion to dismiss.  (ECF No. 8 at 1.)  Nonetheless, the Court finds and recommends that for the same reasons generally applicable to the moving Defendants, the Sheriff's Department should be dismissed from this action.  See Silverton v. Dep't of Treasury of U. S. of Am., 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); Ezor v. McDonnell, No. CV 19-8851-JVS (AGR), 2020 WL 6468448, at *8 (C.D. Cal. Oct. 21, 2020) ("Although Diller has not appeared, Plaintiff's federal claims against her should be dismissed for the same reasons."), report and recommendation adopted, No. CV 19-8851-JVS (AGR), 2020 WL 7479622 (C.D. Cal. Dec. 18, 2020), aff'd, No. 21-55117, 2022 WL 1184187 (9th Cir. Apr. 21, 2022).

### F.      The Defendant Superior Court

Defendant Superior Court has not appeared in this action and did not join in the motion to dismiss.  Nonetheless, the Court additionally finds that the Superior Court should be dismissed from this action for failure to state a claim.  See Silverton, 644 F.2d at 1345; Abagninin, 545 F.3d at 742; Ezor, 2020 WL 6468448, at *8.  The Court further finds the Superior Court should

1  be dismissed as the action against it or its employees is barred by the Eleventh Amendment of

2  the Constitution.  Simmons v. Sacramento Cnty. Superior Ct., 318 F.3d 1156, 1161 (9th Cir.

3  2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its

4  employees), because such suits are barred by the Eleventh Amendment."); Greater Los Angeles

5  Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) ("We conclude that a

6  suit against the Superior Court is a suit against the State, barred by the eleventh amendment.");

7  Ruth v. Walmart Stores Inc., No. 222CV1199KJMCKDPS, 2022 WL 3718312, at *4 (E.D. Cal.

8  Aug. 29, 2022) ("Because the Superior Court is an arm of the state, suits against the court (or its

9  employees in their official capacity) for monetary damages are barred by the Eleventh

10  Amendment.").

11      Further, absolute judicial immunity is afforded to judges for acts performed by the judge

12  that relate to the judicial process.  In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002).  Absolute

13  judicial immunity insulates the judge from actions for damages due to judicial acts taken within

14  the jurisdiction of the judge's court.  Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986).

15  "Judicial immunity applies 'however erroneous the act may have been, and however injurious in

16  its consequences it may have proved to the plaintiff.' "  Id. (quoting Cleavinger v. Saxner, 474

17  U.S. 193 (1985)).  However, a judge is not immune where he acts in the clear absence of

18  jurisdiction or for acts that are not judicial in nature.  Ashelman, 793 F.2d at 1075.  Judicial

19  conduct falls within "clear absence of all jurisdiction," where the judge "acted with clear lack of

20  all subject matter jurisdiction."  Stone v. Baum, 409 F.Supp.2d 1164, 1174 (D. Ariz. 2005).

21      To determine if an act is judicial in nature, the court considers whether (1) the precise act

22  is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy

23  centered around a case then pending before the judge; and (4) the events at issue arose directly

24  and immediately out of a confrontation with the judge in his or her official capacity.  Duvall v.

25  Cty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting Meek v. County of Riverside, 183

26  F.3d 962, 967 (9th Cir. 1999)).

27      Thus here, even if Plaintiff was suing the judge, or an employee of the Superior Court,

28  the Court finds Plaintiff is bringing suit against judicial officers for actions taken in their judicial

capacities over which they have jurisdiction.  Bonilla v. Bashant, No. 318CV02061GPCWVG, 2018 WL 4700474, at *3 (S.D. Cal. Oct. 1, 2018) ("Judicial immunity also "extends to non-judicial officers for all claims relating to the exercise of judicial functions," including administrative acts that are part of the judicial process . . . For these reasons, Plaintiff's Complaint is subject to dismissal sua sponte both for failing to state a claim upon which § 1983 can be granted, and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1) . . . Therefore, leave to amend this action is denied. See Lopez v. Smith, 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) (en banc) (noting that if a claim is classified as frivolous, "there is by definition no merit to the underlying action and so no reason to grant leave to amend").

The Court thus finds the Court may additionally *sua sponte* dismiss the Superior Court pursuant to the Eleventh Amendment, or judicial immunity.  See Citizens of Idaho, 2012 WL 3905235, at *1 ("All remaining Defendants are government actors and immunity must also be addressed for the Plaintiffs' claims to proceed.").

### F.   The Court Recommends Dismissal With Prejudice and Without Leave to Amend

Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").  "Before dismissing a *pro se* civil rights complaint, the plaintiff should be given 'notice of the deficiencies in his or her complaint' and provided 'an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment.' "  Ezor, 2020 WL 6468448, at *1 (quoting Eldridge v. Block, 832 F.2d 1132, 1135-36 (9th Cir. 1987)).  Nonetheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved [and] are not required to grant leave to amend if a complaint lacks merit entirely."  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

The Court considered whether granting leave to amend would be proper, such as the court in Kwong:

> Kwong's factual pleading with respect to the Sheriff is minimal, and the Court finds that no viable federal claim has been pled under § 1983. Most of the FAC centers on allegations involving the securitization of the loan, the "transfer of a fraudulent instrument", and the unlawful "robo-signing" of documents. There is no indication that these allegations have anything to do with the Sheriff. The only mention of the Sheriff in the FAC pertains to Kwong's allegations that she suffers from constant worry that the Sheriff will "throw her out of her home without warning" as the Sheriff allegedly first tried to do in April 2017. *See* FAC ¶ 5.5B. Kwong further alleges in a conclusory fashion that the Sheriff "helped perpetrate the fraud with an unlawful removal through a Notice to vacate," and that the Sheriff was "part of Wells Fargo's violations of deprivations of plaintiff's property." *Id.* ¶ XII.
>
> These sparse and vague allegations fail to state a claim for relief against the Sheriff for a violation of § 1983. Factual allegations in a pleading must meet a level of specificity that is not present in the FAC. *See Twombly*, 550 U.S. at 555. Vague or conclusory allegations are not sufficient to survive a motion to dismiss. *Id.* As currently pled, Kwong's allegations against the Sheriff consist of only "labels and conclusions," and the Supreme Court has decisively held that Rule 8 notice pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 500 U.S. at 555).[3] The Court therefore DISMISSES the FAC WITH LEAVE TO AMEND on the basis that Kwong has failed to allege a viable federal claim and the Court lacks subject matter jurisdiction.

Kwong v. Santa Clara Cnty. Sheriff's Off., No. 17-CV-02127-BLF, 2017 WL 4950005, at *2 (N.D. Cal. Nov. 1, 2017).  Also, in Liao, the court granted leave to amend as to some of the individual defendants at the court, and not as to the superior court.  See Liao v. Quidachay, No. C05-1888 CW, 2007 WL 196672, at *1 (N.D. Cal. Jan. 24, 2007) ("In that order, the Court dismissed with leave to amend the claims against the Superior Court Defendants based on judicial immunity and quasi-judicial immunity; dismissed the claims against the Superior Court itself without leave to amend.").

Here, the Court finds there is enough factual allegations in the complaint to determine amendment would be futile, based on what each Defendant is alleged to have done, and based on the applicable law demonstrating Plaintiff's failure to state a federal claim, and due to qualified and other immunity grounds.  The Court finds dismissal with prejudice and without leave to

1    amend is appropriate here, as the Court finds Plaintiff has failed to state a cognizable claim, and

2    amendment would be futile as the complaint lacks merit.  See Dang, 2014 WL 793613, at *8 ("A

3    sheriff is not liable for wrongful eviction if the writ is valid on its face, even if it is invalid or

4    unenforceable because of some defect in the procedures . . . [b]ecause the court finds that

5    amendment would be futile, the [*pro se* party's] claims against ACSO are DISMISSED with

6    prejudice."); Citizens of Idaho, 2012 WL 3905235, at *3; Lopez, 203 F.3d at 1129.[4]

7    / / /

8    / / /

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22

---

[4]  The Court also considered whether leave to amend should be granted due to any potential claims against a private party.  See Citizens of Idaho, 2012 WL 3905235, at *5 (given *pro se* status, finding "District Court should allow Plaintiffs one opportunity to amend their complaint to state a claim upon which relief could be granted as limited to these three [private bank] Defendants . . .[but that] Plaintiffs should not, however, include the state or county governmental entities in any amended pleading because each of them have immunity.").  However, here Plaintiff has not named any other parties except for the government employees and entities, and the Court has found all named Defendants should be properly dismissed with prejudice and without leave to amend.  The Court finds it would be inappropriate to allow leave to amend to potentially bring claims against any private party, as Plaintiff has not named any such private party here.  The only mention of a private company is where Plaintiff states: "My husband . . . and my daughter witnessed the crime [and] CAPITAL REAL Estate Group is also involved."  (Compl. 6.)  This only appears to be a company managing the Property currently, and does not appear to be the same company that was named as the plaintiff in the unlawful detainer action.  The Court's order does not foreclose the filing of a different action by Plaintiff against parties not named in this action, on different legal and factual grounds.

# V.

## RECOMMENDATION AND ORDER

For all of the above explained reasons, IT IS HEREBY RECOMMENDED that:

1.     Defendants Michael Boudreaux's, Ronna Brewer's, and Rhonda L. Pack's request for judicial notice (ECF No. 8-2) be GRANTED;

2.     Defendants Michael Boudreaux's, Ronna Brewer's, and Rhonda L. Pack's motion to dismiss (ECF No. 8) be GRANTED;

3.     Defendants Michael Boudreaux; Ronna Brewer; Rhonda L. Pack; County of Tulare Sheriff Department; and Superior Court of California, County of Tulare be DISMISSED from this action; and

4.     This action be DISMISSED with prejudice and without leave to amend.

These findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, Plaintiff may file written objections to the findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that:

1.     The hearing set for September 14, 2022, is HEREBY VACATED; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1       2.     The Clerk of the Court be DIRECTED to randomly assign a District Judge to this

2    action.

3

4 IT IS SO ORDERED.

5 Dated:   **September 7, 2022**

                                    UNITED STATES MAGISTRATE JUDGE